UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ROLAND SCOTT ALVAREZ,<br><br>        Petitioner<br><br>v.<br><br>WILLIAM STEPHENS[1],<br>Texas Department of Criminal Justice<br>Correctional Institutions Division Director,<br><br>        Respondent | Civil Action<br>No. SA-11-CA-333-XR |

MEMORANDUM DECISION

Petitioner's 28 U.S.C. § 2254 habeas corpus petition challenges his confinement pursuant to a conviction and thirty-year sentence for aggravated robbery in cause number 2005CR5846 in the 175th District Court of Bexar County, Texas. The conviction was affirmed on appeal. *Alvarez v. State*, No. 04-07-00268-CR (Tex. App. — San Antonio 2008), and the Texas Court of Criminal Appeals refused Alvarez's petition for discretionary review. *Alvarez v. State*, No. 524-08. The Court of Criminal Appeals denied Alvarez's state habeas corpus application. WR-73,591-01.

**I. Statement of facts**

On the evening of February 16, 2005, Stephanie McElroy was working at Wisniewski Grocery and her friend, Maria Lopes, was keeping her company. Two armed men, one masked and the other not, entered the store shouting. The masked gunmen pulled McElroy to the floor, placed a gun to her head, retrieved money from a nearby drawer, cocked the gun and kicked McElroy in the throat. The same gunman instructed both women to remain on the ground as the two men fled the store.

After the robbery, Lopes provided the police officers with a description of the assailants: (1) the masked perpetrator had a limp and (2) the unmasked perpetrator was a Hispanic male wearing a puffy jacket and a cap. McElroy was not present when Lopes described the assailants and McElroy did not provide a description to the officers that evening. Four days later, however, McElroy provided a description of

---

[1] William Stephens has replaced Rick Thaler as Director of the TDCJ Correctional Institutions Division, and he is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

the unmasked gunmen and, when presented with a photo array, could not identify any assailant. The array did not contain a picture of Roland Alvarez.

Based on a Crime Stoppers' tip, Ricardo Alvarez, Roland's brother, was identified as a possible suspect in the robbery. San Antonio Police Officer Jamie Trevino prepared two photo arrays containing a photo of both Roland and Ricardo. McElroy and Lopes examined the photo arrays independently and both women identified Roland as the unmasked perpetrator. Neither witness was able to identify Ricardo as the masked perpetrator.

During trial, defense counsel directed both witnesses' attention to the large, visible red scar on Roland's throat. Neither recalled such a scar and had not described such a mark to the officers. Lopes and McElroy testified that the unmasked perpetrator was wearing a puffy jacket that could have impaired any view of his neck. McElroy further explained that she had not seen the scar because she never saw his neck.

*Alvarez v. State*, 2008 WL 723316 at *1, No. 04-07-00268-CR (Tex. App. — San Antonio 2008).

## II. Petitioner's grounds

Petitioner's § 2254 motion raises the following grounds:

1.  Ineffective assistance of trial counsel because:

    a.  counsel failed to request a hearing on his motion to suppress the pretrial identification and failure to object to identification of Petitioner during trial;

    b.  counsel commented during trial that Petitioner was the one the witnesses saw commit the crime;

    c.  counsel did not meet with Petitioner before trial to adequately prepare and did not sufficiently communicate with Petitioner;

    d.  counsel was not present for the entire sentencing hearing;

    e.  counsel did not present available mitigating evidence at sentencing, because family members were available to testify, but only one was called;

    f.  counsel failed to object to the officer's testimony that bolstered the unimpeached witnesses' credibility;

    g.  counsel failed to object to improperly admitted 404(b) evidence during the punishment hearing;

        h.        counsel's overall performance prejudiced Petitioner.

2.        The pretrial and in-court identifications of Petitioner were obtained in violation of Petitioner's constitutional rights because:

        a.        the photo lineup was suggestive;

        b.        photo identification procedures violated suggested procedure;

        c.        Petitioner was singled out by his white t-shirt;

        d.        the selection of fillers could not match the description, because no prior description was given;

        e.        there was no blind administration of the photo lineup;

        f.        Detective Trevino did not follow San Antonio Police procedures in obtaining the identification;

        g.        the suggestive out-of-court identification led to a substantial likelihood of irreparable misidentification and the in-court identification was unreliable.

3.        The sentencing record was not transcribed or filed with the appellate court.

4.        Appellate counsel was ineffective for failing to review the entire record.

### III. Standard of review

A petitioner may not obtain relief with respect to a claim adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to or involved an unreasonable application of clearly-established federal law, as announced by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. § 2254(d). A decision is contrary to clearly-established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be unreasonable, the state decision must be more than merely incorrect or erroneous.

*See Lockyer v. Andrade*, 123 S. Ct. 1166, 1174 (2003). Rather, the state court's application of clearly established law must be objectively unreasonable. *Id.* The petitioner bears the burden of proving entitlement to habeas relief. *Williams v. Taylor,* 529 U.S. at 403; *Orman v. Cain*, 228 F.3d 616, 619 (5th Cir. 2000). Factual determinations of a state court are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. § 2254(e)(1). In a habeas proceeding, the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), applies. *Kittleson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005). The test is whether constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. at 623.

### IV.  Ground II - identification

This Court first addresses the claims under the second ground concerning identification. In the state habeas corpus application, Petitioner contended he was the only suspect in a photolineup wearing a white t-shirt, which is what the perpetrator was wearing. Petitioner asserted the other persons included in the photo lineup could not have matched the descriptions of the perpetrator, because the witnesses did not give descriptions of the perpetrator until after they identified him in the photo lineup. Petitioner claimed the two witnesses gave their statements in each other's presence. Petitioner argued there was no blind administration of the photo lineup, because the detective knew who the suspect was before conducting the photo lineup and he told the witnesses that he had a suspect. Petitioner asserted the photo lineup did not follow police procedures, because there was no formal, complete record of the identification proceedings.

Petitioner argued that the in-court identifications by the witnesses were not based on an independent origin. During trial, Lopes said she could see the perpetrator's entire neck area, but in her description to the police, she failed to mention seeing the large scar on Petitioner's neck. When

the scar was pointed out to Lopes at trial, she stated that the scar could have been covered by the jacket that the perpetrator wore. McElroy testified that she saw the perpetrator for about 45 seconds. Lopes testified she saw the unmasked gunman for five or six seconds. Petitioner asserted that the witnesses should have been able to see the perpetrator's neck and they would have noticed a scar on the perpetrator's neck if he had a scar. Petitioner argued that McElroy testified that she only knew Petitioner was the perpetrator because she had picked him out of a lineup, citing volume 3, page 24 of the Reporter's Record.[2] Petitioner pointed out the witnesses did not identify Petitioner and give descriptions to the police until about one month after the robbery.

The Due Process Clause protects against the admission of evidence derived from suggestive identification procedures which result in a substantial likelihood of irreparable misidentification. *Neil v. Biggers,* 409 U.S. 188 (1972); *Simmons v. United States,* 390 U.S. 377 (1968). The admissibility of identification evidence is governed by a two-step analysis: first, a determination is made of whether the identification procedure was impermissibly suggestive; second, a determination is made of whether, under the totality of the circumstances, the suggestiveness led to a substantial likelihood of irreparable misidentification. *Herrera v. Collins,* 904 F.2d 944 (5th Cir. 1990). When a pretrial identification procedure is unduly suggestive, the in-court identification nonetheless will be admissible if its origin is independent of the improper procedure. *Doescher v. Estelle,* 616 F.2d 205 (5th Cir. 1980).

On appeal, Petitioner contended the evidence was insufficient because the identifications

---

[2] However, that is not what McElroy testified. When asked to describe the perpetrator, she began to do so, and then she stated she picked him out of the lineup and he was sitting there, in the courtroom. McElroy did not testify that she only knew Petitioner was the perpetrator because she picked him in the lineup. Also, regarding the scar, McElroy testified that she did not see the perpetrator's neck (Reporter's Record volume 3, p. 55). Lopes testified that the perpetrator was wearing a jacket with a collar, and the scar could have been covered (Reporter's Record volume 3, p. 93).

were suspect.  In finding the evidence sufficient, the Fourth Court of Appeals set out the following:

> Although Roland argues that the witnesses' failure to notice the scar at the time of the incident makes their identifications inherently suspect, each witness provided a reasonable explanation for their failure to see the scar at the time of the robbery: a puffy coat and being more focused on the assailant's face and the gun at the time of the robbery. Lopes described Roland immediately after the robbery, and during trial, as wearing a big puffy jacket with a collar. She testified she saw Roland up close, at arms length, under bright lights and explained that the scar could have been covered up by the jacket or the shadows, but in either case, she was not specifically looking for a scar. McElroy gave a description of the perpetrator four days after the robbery. She stated that the perpetrator was tall and slim, with defined cheek bones and eyebrows and wearing a thick black jacket. McElroy also testified that the lights were sufficient, and that she stared at Roland, who was right in front of her, for at least forty-five seconds. Both Lopes and McElroy were extensively cross-examined by defense counsel. Throughout the cross-examinations both women remained consistent and certain that Roland was the unmasked perpetrator.
>
> \* \* \*
>
> Roland also argues the identification was suspect because he was the only individual in the array wearing a white T-shirt; the attire of the perpetrator. No objection was made to the array, and Roland does not complain on appeal about the process of the array. Rather, Roland's complaint goes to the weight to be given to the identification by the witnesses. Both witnesses testified Roland had a puffy jacket over his t-shirt, and we do not believe the fact that Roland had a white t-shirt on in the array diminishes the identification of Roland, particularly since he was also identified during the trial.

*Alvarez v. State*, 2008 WL 723316 at \*1, No. 04-07-00268-CR (Tex. App. — San Antonio 2008).

The Court of Criminal Appeals denied the habeas corpus application, thereby rejecting the claims that the identifications of Petitioner were unconstitutional.  Petitioner has not shown that the rejection of these claims was contrary to or involved an unreasonable application of clearly-established federal law or that the rejection of these claims  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## V.  Ground I - ineffective assistance of trial counsel

Petitioner asserts he received ineffective assistance of trial counsel.  Petitioner's claims are conclusory, because he does not allege facts to support his claims of ineffective assistance.  *Koch v. Puckett*, 907 F.2d 524, 529 (5th Cir. 1990).  Also, Petitioner's claims of ineffective assistance of trial counsel lack merit, based on his factual allegations in his state habeas corpus application.

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established a two-prong standard for ineffective assistance of counsel claims.  First, petitioner must demonstrate that his counsel's performance was deficient and, second, that the deficient performance prejudiced the defense.  To show that the performance was deficient, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.  The evaluation of counsel's performance concerns whether counsel's assistance was reasonable under all the circumstances, with the assessment being made not in hindsight, but by evaluating the conduct from counsel's perspective at the time of the conduct. *Id*. at 688-89.  Thus, the reviewing court is to be highly deferential in scrutinizing counsel's performance. *Id*.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id*. at 689.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct." *Id*. at 690.  "Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit will not second guess legitimate strategic choices." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Green v. Johnson,* 116 F.3d 1115, 1122 (5th Cir. 1997) (quoting *Garland v. Magio,* 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)).

Deficient performance will be found to be prejudicial only upon a showing that, but for counsel's errors, there is a reasonable probability that the final result would have been different and that confidence in the reliability of the verdict is undermined.  *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Armstead v. Scott*, 37 F.3d 202, 206-07 (5th Cir. 1994).  A defendant must show "actual prejudice" as a result of his counsel's deficient performance.  *Moody v. Johnson*, 139 F.3d 477, 482 (5th Cir. 1998).  The petitioner is required to show "that the attorney's errors were so deficient as to render the verdict fundamentally unfair or unreliable." *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997).  A petitioner must affirmatively prove and not merely allege prejudice.  *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994).

### A.  Failure to request a hearing or object regarding identification

Petitioner contends counsel failed to request a hearing on the motion to suppress identification and counsel failed to object to the identifications at trial.  However, counsel did file a motion for a hearing on the identification issue (Clerk's Record pp. 43-48).  Also, Petitioner has not shown that the identifications were unconstitutional.  Therefore, he has not shown counsel's performance was deficient for failing to object to the identifications and he has not shown he was prejudiced by the failure to object.

## B. Comment that Petitioner was the person witnesses saw commit the crime

Petitioner asserts counsel commented during trial that Petitioner was the one who witnesses saw commit the crime. Petitioner's state habeas application cites to Reporter's Record volume 3, p. 41.

McElroy testified that the first gunman came in and there was yelling to get on the floor (Reporter's Record volume 3, p. 23). The second gunman entered, wearing a mask and yelling for the money (Reporter's Record volume 3, p. 24). The second gunman pulled her to the ground by her hair. He dragged her to where the money was, and he had a gun to her head. McElroy identified Petitioner as the first gunman (Reporter's Record volume 3, p. 32). On cross-examination, defense counsel asked McElroy if, prior to the robbery, her focus was on talking with her friend, and McElroy said it was (Reporter's Record volume 3, p. 37). Counsel asked McElroy if her focus was on the gun when the incident began, but McElroy said her focus was on the person and the gun (Reporter's Record volume 3, p. 39). Counsel asked McElroy if she was stunned, and McElroy said she was (Reporter's Record volume 3, p. 40). McElroy said she was looking back and forth between the gun and the person. McElroy said she was stunned (Reporter's Record volume 3, p. 41). Counsel asked McElroy if she looked at the second person, and McElroy said she did. Counsel asked McElroy if the second person also had a gun, and McElroy said he had the gun to her head. The following then occurred (Reporter's Record volume 3, pp. 41-42):

> Defense counsel: So your attention to the person here in the courtroom this morning was then focused – this afternoon – is in focus to this other person, right?
>
> Stephanie McElroy: After the first guy came in, my attention went to the second guy because he had me by my hair dragging me around.
>
> Defense counsel: So you basically lost your attention with the first person that was in the store; is that right?

> Stephanie McElroy: Not really that I lost it. I just didn't have a choice to look over there because the other guy had a gun to my head.
>
> Defense counsel: Well, my point is: You didn't continue to look at the first person that was in the store, did you?
>
> Stephanie McElroy: I couldn't. The guy had my hair and a gun to my head.

Counsel did not concede that Petitioner was the person who committed the crime. McElroy had already testified that Petitioner was the first gunman, and defense counsel was taking McElroy through her version of the events to show McElroy's focus during different stages of the robbery. Defense counsel argued to the jury the issues of McElroy's focus and identification (Reporter's Record volume 4, pp. 15-17, 20). Petitioner has not shown deficient performance or prejudice regarding this sub-claim about counsel's comment.

### C.  Failure to meet with Petitioner to adequately prepare

Petitioner contends counsel did not meet with him before trial to adequately prepare and counsel did not sufficiently communicate with Petitioner. In an affidavit in state habeas corpus, defense counsel Tony Jimenez, III, averred he met with Petitioner to discuss any available defenses prior to trial (state habeas record at p. 182). The state habeas court found counsel was credible (state habeas record at p. 196 - trial court findings and conclusions at p. 11). That determination is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Self v. Collins*, 973 F.2d 1198, 1214 (5th Cir. 1992). Petitioner has not shown deficient performance or prejudice regarding this sub-claim about preparation.

### D.  Failure to be present for entire sentencing hearing

Petitioner contends counsel was not present for the entire sentencing hearing. Petitioner was represented at trial by two attorneys – Tony Jimenez, III, and Catherine Valenzuela. The sentencing

phase took place on two days – March 2, 2007, and March 23, 2007.  Jimenez was present and represented Petitioner on March 2, and Valenzuela was present and represented Petitioner on March 23.  Regarding representation on the two days of the sentencing hearing, Petitioner has not shown how counsel rendered deficient performance or how he was prejudiced.

### E.  Failure to present mitigating evidence at sentencing through family members

Petitioner asserts counsel did not present available mitigating evidence at sentencing.  He claims family members were available to testify, but only one was called.  Petitioner's state habeas corpus application alleged that only Roland Alvarez, Sr., Petitioner's father, was called as a punishment witness.

Alvarez testified that Petitioner received a GED from St. Philip's College, that his son was in a robotics program and in a vocational education program (Reporter's Record of sentencing hearing of March 2, 2007, pp. 64-65 - included as part of the state habeas corpus record at pp. 310-11).  Alvarez testified that Petitioner's problem was drug use (Reporter's Record at p. 65, state habeas record at p. 311).  He said that other than this case, Petitioner is not a violent person and that he had never before been in trouble for violence (Reporter's Record at pp. 65-66, state habeas record at pp. 311-12).  Alvarez said that Petitioner's criminal history was mainly for graffiti (Reporter's Record at p. 66, state habeas record at p. 312).  Alvarez testified that Petitioner did wrong, but he was not a violent person (Reporter's Record at p. 67, state habeas record at p. 313).  Alvarez said Petitioner was a good man and he would not be a danger to the community, because there was no pattern of violence or drug use (*id.*).

On cross-examination, Alvarez was asked about the fact that Petitioner was disciplined in jail in 2005 for fighting with another inmate (Reporter's Record at p. 67, state habeas record at p. 313).  Alvarez said he did not know what happened because he was not there (*id.*).  Alvarez testified

that he knew things happen in jail and a person has to take care of themselves (Reporter's Record at pp. 67-68, state habeas record at pp. 313-14). Alvarez was asked about the time Petitioner and seven other inmates assaulted another inmate in 2006 (Reporter's Record at p. 68, state habeas record at p. 314). Alvarez said Petitioner told him he had nothing to do with it, but there was a group there and they all got blamed (*id.*). Alvarez testified that Petitioner was in a tagging crew, not a gang (Reporter's Record at p. 69, state habeas record at p. 315). When asked what Petitioner told him about the robbery, Alvarez testified that Petitioner had said he had "OD'd" or was doing drugs (Reporter's Record at pp. 69-70, state habeas record at pp. 315-16).

Attached to Petitioner's state habeas corpus application are affidavits from family members (state habeas corpus record at pp. 58-72). Rachel Alvarez, Petitioner's mother, stated she told counsel she wanted to testify at sentencing, but counsel said he did not want to put her on the stand (state habeas corpus record at p. 58). Petitioner's father stated counsel said Petitioner's mother could not testify, because "the state would tear her apart." (state habeas corpus record at p. 55). Petitioner's mother stated Petitioner always worked hard and she listed his jobs (state habeas corpus record at p. 58). She stated Petitioner was a Christian, he loved the Bible, he attended church, he liked spending time with his younger siblings at home, and he was a talented artist (*id.*). She knew drugs became a problem in Petitioner's life, he made mistakes, but he always wanted to better himself (*id.*). She knew Petitioner could do something great with his life and that he could become a productive, loving member of the community (*id.*).

Gloria Muniz, Petitioner's aunt, would have testified for Petitioner if counsel would have contacted her (state habeas corpus record at p. 61). She said Petitioner was respectful; he had sent a book to Washington D.C. to be published; he was a quiet child; and she never saw him while he was on drugs or drinking (*id.*). She stated Petitioner may have made bad choices in the past, but if

he were given a second chance he would make better choices (*id*.).

Guillermo Olivares, Petitioner's grandfather, would have been available to testify if counsel would have contacted him. Olivares said Petitioner was a nice grandson who used to live with Olivares in California (state habeas corpus record at p. 63). Petitioner went to church and read the Bible; he used to watch television with Olivares; he was a good basketball player; he used to help with the lawn and trash; he liked learning new things; he liked for Olivares to read books to him; he was good in school; and he liked to draw and sketch (*id*.). Petitioner was a good person who likes to get along with everybody; he obeys; he is good-mannered; and he is reliable (*id*.). With the right guidance, Petitioner would be respectable and a hard worker; he has potential to be a leader and to become someone in society (*id*.).

Rose Gwilliam, Petitioner's aunt, could have provided information, but counsel did not request character witnesses (state habeas record at p. 66). Petitioner is courteous and respectable (*id*.). He loved the Bible and loved going to church; he enjoyed sports; and he was not mean-spirited (*id*.). As he got older, he became a follower (*id*.). Petitioner was excited to go to college, but due to a family illness, Petitioner had to leave college (*id*.). Regarding this offense, it did not sound like Petitioner, because Petitioner was never a violent person (*id*.).

Olga Johnson, Petitioner's aunt, could have provided information, but counsel did not request character witnesses (state habeas record at p. 69). Johnson described Petitioner's neck scar and a scar on his forehead (*id*.). Petitioner was a good student, and he is kind-hearted, full of compassion, and always there to give a helping hand (*id*.). He was a good writer and expressed feeling and empathy toward others (*id*.). Petitioner had to leave college due to family health issues (*id*.).

To support a claim of ineffective assistance of counsel due to uncalled witnesses, the petitioner must prove that the witness was willing and able to testify, and the substance of the

witness' testimony. *Alexander v. McCotter*, 775 F.2 595 (5th Cir. 1985). "In order for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." *See Alexander v. McCotter,* 775 F.2d at 602. Finally, "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *See Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir. 1981).

  Defense counsel Jimenez's affidavit in state habeas corpus stated Petitioner never indicated there was any mitigating evidence (state habeas record at p. 182). Counsel also stated he consulted with Petitioner and family members on numerous occasions (*id*.). The state court determined that counsel was not made aware of the availability of the family members' potential testimony for sentencing (trial court findings and conclusions at p. 22; state habeas record at p. 207). The state court also concluded there was no showing that Petitioner would have received a lesser sentence had the other family members testified (*id*.). The trial court took into consideration Petitioner's young age and ability to be rehabilitated, but the court also factored in Petitioner's criminal history (*id*.). In addition, Petitioner has not shown that counsel's decision to present only Petitioner's father as a punishment witness was an unreasonable trial strategy. Had counsel called each of the other family members to testify to essentially the same things, each would have been exposed to questions about Petitioner's actions in this offense, Petitioner's other crimes, and other matters, such as jail incidents. It would have been reasonable strategy not to have the cross-examination of Petitioner's father repeated for each witness. Petitioner has not shown the state court's rejection of this sub-claim was unreasonable.

### F. Failure to object to officer's bolstering testimony

Petitioner contends counsel failed to object to the officer's testimony that bolstered the unimpeached witnesses' credibility. In state habeas corpus, Petitioner asserted the officer who conducted the photo lineup was allowed to testify that the witnesses identified Petitioner. The state habeas court determined that in light of the eyewitnesses' identification of Petitioner at trial and their testimony that they identified Petitioner in the photo lineup, the fact that the police officer also testified that the two witnesses identified Petitioner in the photo lineup did not show Petitioner was prejudiced under the second prong of *Strickland* (trial court findings and conclusions at pp. 22-23; state habeas record at pp. 207-08). Petitioner has not shown he was prejudiced and that the state court unreasonably determined he was not prejudiced.

### G. Failure to object to Rule 404(b) punishment evidence

Petitioner claims counsel failed to object to punishment evidence admitted improperly under Tex. R. Evid. 404(b). The state habeas court concluded that the claim lacked merit because as a matter of state law the evidence was admissible (trial court findings and conclusions at p. 23; state habeas record at p. 208). Federal courts sitting in habeas do not review state courts' application of state evidence law. *Jones v. Cain*, 600 F.3d 527, 536 (5th 2010). Petitioner has not shown that the state court's rejection of this sub-claim was unreasonable.

### H. Cumulative prejudicial error due to counsel's overall performance

Petitioner maintains that counsel's overall performance prejudiced him. Because Petitioner's claims of ineffective assistance of trial counsel lack merit, his claim of cumulative error also lacks merit. *United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992).

Petitioner has not shown that the state court's rejection of his claims of ineffective assistance of trial counsel was contrary to or involved an unreasonable application of clearly-established federal

law or that the rejection of these claims resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### VI. Ground three - sentencing proceedings were not transcribed

Petitioner contends the sentencing proceedings were not transcribed on appeal. Transcriptions of the sentencing hearings are included in the state habeas record at pp. 223-241, 245-317. By denying habeas corpus relief, the state court rejected this claim. Petitioner does not allege or show how his constitutional rights were violated by the fact the sentencing proceedings were not transcribed on appeal, how he was harmed, and how the state court's rejection of this claim was contrary to or involved an unreasonable application of clearly-established federal law or that the rejection of these claims resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### VII. Ground four - ineffective assistance of appellate counsel

Petitioner claims that because the sentencing proceedings were not transcribed on appeal, Petitioner received ineffective assistance of appellate counsel because counsel failed to review the entire record. To make out a claim of ineffective appellate counsel, a petitioner must meet the two-prong test of *Strickland v. Washington*. *Smith v. Robbins,* 528 U.S. 259, 285 (2000). To establish deficient performance, a petitioner must show that counsel unreasonably failed to discover and raise nonfrivolous issues." *Id*. To establish prejudice, the petitioner "must show a reasonable probability that, [but for counsel's error], he would have prevailed on appeal." *Id*. at 285-86 (citing *Strickland,* 466 U.S. at 694). To do this, he must show "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Id*. at 288.

The state court rejected this claim, and Petitioner does not identify any issue counsel could have raised on appeal had the sentencing hearing been transcribed. Therefore, Petitioner has not

shown deficient performance of counsel and prejudice, and he has not shown the state court's rejection of this claim was contrary to or involved an unreasonable application of clearly-established federal law or that the rejection of these claims resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### VIII. Conclusion

Petitioner's habeas corpus petition is **DENIED**, and this case is **DISMISSED**. For the reasons set out in this Memorandum Decision, Petitioner fails to make a substantial showing of the denial of a federal right as required by 28 U.S.C. § 2253(c)(1)(A) and Fed. R. App. P. 22 for a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *see also* Rules Governing Section 2254 Cases in the United States District Courts Rule 11(a). Accordingly, Petitioner is **DENIED** a certificate of appealability.

It is so ORDERED.

SIGNED this 23rd day of December, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE